12594

TOWN OF MAYESVILLE v. CLAMP

(147 S. E., 455)

*Mr. C. T. Graydon,* for appellant,

*Messrs. Epps & Levy,* for respondent,

February 15, 1929.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

The defendant, E. D. Clamp, was tried before the Mayor *pro tempore* of the Town of Mayesville on the charge of violating the traffic ordinance of said town, it being charged

in the warrant that the defendant "was speeding the automobile or running in excess of fifteen (15) miles per hour," which trial resulted in a verdict of "guilty of speeding," upon which the Mayor *pro tempore* imposed a fine of $75 or 30 days on the chaingang. Thereafter the defendant appealed to the Court of general sessions from the fine imposed, upon several exceptions. The appeal from the Mayor's Court was heard by Hon. J. Henry Johnson, Judge presiding at the Court of general sessions for Sumter County, who overruled defendant's exceptions and ordered the sentence carried out. From the order issued by Judge Johnson, the defendant has appealed to this Court, upon the ground that the warrant under which the defendant was tried before the Mayor *pro tempore* was fatally defective, contending that the defendant was entitled to his release as a matter of law upon motion. The other exceptions upon which the matter was heard before Judge Johnson are not pressed before this Court.

So much of the order of Judge Johnson that is pertinent to the question raised before this Court is as follows:

"This matter came on to be heard before me upon appeal by the defendant from his conviction and sentence for violating the traffic ordinance of the Town of Mayesville. The appeal was argued before me in open Court at Sumter, and I have reserved my decision upon the matters involved until the present.

"1. The first exception alleges that the warrant issued was fatally defective, in that the facts were alleged on information and belief without stating the source of information and the grounds of belief.

"I find nothing in our statutes or in the decisions of our Appellate Court requiring arrest warrants issued upon information and belief to set forth the 'source of information and the grounds of belief.' Such a requirement in arrest warrants would tend to a miscarriage of justice in many instances, and would be tantamount to requiring the

prosecution to furnish defendant with the names of the witnesses against him, and this has never been required in this State, even in felonies. *State v. Robinson,* 61 S. C., 106, 39 S. E., 247. See *City of Spartanburg v. Parris,* 85 S. C., 227, 67 S. E., 246.

"Many reasons why public policy should not require arrest warrants to 'set forth the source of information and grounds of belief' might be advanced, and such reasons have probably influenced the law making body of this State, since there is no positive enactment requiring the same. In fact the only specific requirement with reference to arrest warrants is found in Section 857 of the Criminal Code, and is as follows: 'Provided, that it shall not be necessary to set forth the source of information, the facts and grounds of belief in the affidavit upon which a warrant of arrest shall issue, but it shall only be necessary in cases of search warrants.'

"I do not express an opinion as to whether this section his general application or refers only to warrants under that particular chapter. But I do think it is worthy of consideration that the only time the Legislature has expressed itself upon this matter, it has made the provision above quoted.

"A distinction in the case of a search warrant is readily apparent, since the fundamental law of the land protects the citizens against unreasonable search and seizure, and, in order that the officer may be sure, before issuing a search warrant, of the reasonableness of the proposed search, it is proper that a search warrant should set forth the source of information and grounds of belief. In the instant case the offense charged was plainly and substantially set forth, and that is the gist of Section 4399, Vol. 3, Code of 1922, and Sections 60 and 26 of the Code of Criminal Procedure, Code of 1922, so far as the same are pertinent to the issue raised in this appeal. * * *

"It is therefore, ordered, adjudged and decreed that the exceptions in this case be overruled, and that the sentence against the appellant be carried out."

At the call of the case for trial, the defendant, by his attorney, moved to dismiss the warrant on the ground that the same was fatally defective, in that the affidavit upon which the warrant was issued did not state the source of information or grounds of belief. The motion was overruled, and the case proceeded to trial, with the result above stated.

The affidavit upon which the warrant was issued, omitting the formal parts, is in the following language:

"Personally appeared before me M. T. Burnside, a notary public of said County and said State, N. W. James, who, being duly sworn, says that in the Town of Mayesville, S. C., on August 16, 1926, one E. D. Clamp did drive an automobile at an unlawful rate of speed, to wit: Thirty miles per hour, on the Main Street of said town, and that at said time and place the said E. D. Clamp did drive said automobile on said street in a dangerous and reckless manner. The same being stated on information and belief. N. W. James. Duly probated."

It is admitted that Mr. N. W. James, the town policeman, who made this affidavit, did not see the defendant driving the automobile at an excessive rate of speed, and that the warrant was sworn out solely on information and belief, as stated in the affidavit. For this reason the appellant contends that the warrant was fatally defective, and that he was therefore entitled to be released as a matter of law. In support of this position counsel for appellant calls special attention to the case of *Murray v. Harris,* 112 S. C., 342, 99 S. E., 798, 5 A. L. R., 1152, cited in appellant's brief. A study of the opinion in that case convinces us that the same is not controlling in the case at bar. The affidavit and warrant in question in that case were involved in a requisition proceeding, wherein the Governor of the State of Georgia made requisition upon the Governor of the State of South Carolina for the arrest and delivery of the respondents in that case to the agent of the State of Georgia, to be carried to the State of Georgia for trial on the charge of burglary.

It clearly appears from the opinion in that case that the Court had in mind the rules and principles applicable to requisition cases, wherein one State makes request of another State for the arrest and return of a person alleged to have violated the laws of the first named State, and did not have in mind the practice that should govern the trial of cases in a magistrate's Court or in a Mayor's Court in this State. In the opinion rendered in that case, the Court cited as authority for its position *Rice v. Ames*, 180 U. S., 371, 372, 21 S. Ct., 406, 45 L. Ed., 577, which latter case involved a requisition upon the Governor of the State of Georgia by the Governor of the State of New York for the arrest and delivery of a person alleged to have violated the laws of the State of New York.

As we view the opinion in the case of *Murray v. Harris, supra,* the same should not be held to govern the decision of the Court in the case at bar. As pointed out in the order of his Honor, Judge Johnson, there is nothing in our statutes requiring arrest warrants issued upon information and belief to set forth the "source of information and grounds of belief," neither is there anything in our statutes requiring such information to be set forth in the affidavit upon which the warrant is based. Section 26 of the Code of Criminal Procedure, which applies to warrants issued by an Intendant as well as to warrants issued by a Magistrate, reads as follows:

"All proceedings before Magistrate in criminal cases shall be commenced on information under oath, plainly and substantially setting forth the offense charged, upon which, and only which, shall a warrant of arrest issue."

According to our view, this section is applicable to the question under consideration, and should not be construed to require that the "source of information and the grounds of belief" be set forth in the warrant or the affidavit upon which the warrant is based.

The exceptions are therefore overruled, and it is the judgment of this Court that the judgment of the lower Court be, and is hereby, affirmed.

Messrs. Justices Blease and Stabler concur.

Mr. Chief Justice Watts and Mr. Justice Cothran dissent.

Mr. Justice Blease (concurring) : If the view taken by Mr. Justice Cothran is adopted by this Court, I fear the result will be to almost paralyze the enforcement of the laws of the State against crime. Throughout the whole history of the State, magistrates, formerly called trial justices, have been issuing warrants of arrest for persons, charged with crime, upon affidavits made "on information and belief," without going further to set forth the sources of the information and the grounds of the belief. If this conduct is to be declared absolutely illegal by this Court, it means, in my opinion, the escape from justice, more than ever, of those charged with law violations. Whatever this Court decides, magistrates in South Carolina will continue for years to come to issue warrants of arrest upon affidavits which charge the person sought to be arrested "on the information and belief" of the affiant that such person has committed some criminal offense. We must not forget that nearly all our magistrates are without legal training, and few of them ever see, or even hear, of the decisions of this Court. Professional criminals are better informed than magistrates of decisions as to enforcement of criminal laws. If we hold that a warrant of arrest issued on "information and belief" is *absolutely void,* the result will be, I am fearful, that under previous decisions of this Court the criminal who, in resisting arrest, kills the officer, seeking to do his duty, with a warrant of that kind only in his possession, will be held justifiable in the killing, for it has been decided that it is not unlawful to resist an arrest absolutely illegal. *State v. Wimbush,* 9 S. C., 309; *State v. Dupre,* 134 S. C., 268, 131 S. E., 419.

If the view of Mr. Justice Cothran is correct under the law, it is the duty of this Court to adopt it, regardless of the consequences. I am relieved to feel that the law is otherwise. I am not at all unmindful that "the sacred right of the liberty of the citizen" is to be protected. But, too often, when we consider the rights of "citizens," we fail to remember that the man who is sworn to enforce the law is, after all, a citizen.

I believe thoroughly in the well-considered and forceful statement of Mr. Justice Cothran in the case of *Falls v. Palmetto Power & Light Co.*, 117 S. C., 327, 109 S. E., 93:

"In this day of an unprecedented crime wave, every encouragement should be extended to the guardians of the law, and, although individual instances of hardship may occur, these faithful protectors of society should not be themselves manacled, as I fear will be the consequence."

"The prohibition against unreasonable searches and seizures contained in the federal and most, if not all, of the state constitutions *is directed against the use of general warrants* authorizing searches and arrests, and has no effect on the right to arrest without a warrant." 2 R. C. L., 463. (Italics added.)

The "general warrants" referred to in the quotation from Ruling Case Law were warrants formerly known in both England and America, under which constables and other officers went at will into the homes of the people, searched those homes, seized property therein, and arrested any desired persons, without the warrant particularly describing the houses to be searched, the effects to be seized and the persons to be arrested.

The main purpose of Section 16 of Article 1 of our Constitution is to prevent the search of a house or the arrest of a person except upon a warrant, when a warrant is required at all, which *particularly* describes the "*place* to be searched and the *person* or *thing* to be seized." For many years the right to arrest persons without any warrant at all in cases of felony,

upon proper information, and when misdemeanors are committed in the presence of an officer, has been recognized in this state, and the constitutional provision as to searches and seizures has been held not to apply to such arrests. If, on the serious charge of the commission of a felony, one may be arrested without any warrant whatever, why should we go too far in protecting a person, charged only with a misdemeanor, from arrest under a written warrant issued by a magistrate, which may be defective or *voidable,* and not absolutely *void?*

We think some of the confusion as to the meaning of Section 16 of Article 1 is due to another provision of our Constitution, which gives an accused person in criminal prosecutions the right "to be fully informed of the nature and cause of the accusation." Section 18, Art. 1, Constitution. This last-mentioned provision in our organic law refers to the trial of the accused; not to his arrest for the crime of which he may be accused. While an accused may be arrested on a warrant that does not fully inform him of the nature and cause of the accusation, he may, when he is brought to trial, demand the information he is entitled to have under the provisions of Section 18 of Article 1.

The provisions of Section 26 of the Code of Criminal Procedure as to warrants of arrest were intended, of course, to comply with both of the provisions of the Constitution to which we have referred. A Magistrate is there forbidden to issue a warrant of arrest in a criminal case until he has received "information," under oath, which "plainly and substantially" set forth *"the offense charged."* The "information" to be given the Magistrate is clearly not to be conclusive proof that the one sought to be arrested is guilty of crime; it is only to be information that there is a "probable cause" that he has committed a crime. The words "plainly and substantially" refer entirely to the offense charged against the person and not to the "information" as to that offense. One sentence, set off by itself as a distinct

paragraph in Section 26, is enough to show positively that the "information" is not to be formal or to contain a detailed statement. That sentence is this: *"The information may be amended at any time before trial."* See *State v. Nash,* 51 S. C., 319, 28 S. E., 946; *Ridgeland v. Gens,* 83 S. C., 562, 65 S. E., 828. *If the defective information can be amended at any time before trial, of what great importance is it to have the information accurately and technically correct at the time of issuing the warrant?* If it is defective, and can be amended, then the process is *voidable,* and not *void,* as is so strongly argued.

The decisions from other states seem to be conflicting as to the question involved in this case. The reason, perhaps, for this conflict is due to the language of the constitutional provisions and the statutes of the several states. We find in Corpus Juris many and various holdings upon the question. We are inclined to agree with the general principle therein announced, which seems to us to fairly state what the law is, and should be, not only for the protection of our citizens generally, but for that of the officers charged with the enforcement of the law as well.

"A warrant of arrest must contain a recital that a complaint on oath or affirmation has been made, unless this is rendered unnecessary by statute. The warrant need recite only the substance of the complaint; it is not necessary to set out the evidence, even in justification of the Magistrate, unless so required by statute. A warrant, which recites that, upon an examination on oath, it appeared to the justice that the offense charged had been committed is valid on its face, even though it also states that the original complaint was made on information and belief." 16 C. J., 304.

Our statute does not require the evidence to be set out.

The Magistrate who issues, and not the officer who is directed to serve, the warrant, should judge as to the "probable cause" on which the warrant for arrest is based. This was the view of Lord Mansfield, when he declared illegal

the general warrants formerly issued in England, for he then said: "It is not fit that the judging of the information should be left to the discretion of the officer. The Magistrate should judge, and give certain directions to the officer." Note to Cooley's Constitutional Limitations, 427. This, as I conceive it, will sufficiently protect the rights and liberty of one charged with crime in a warrant issued by a Magistrate. The person charged in such warrant with the commission of a criminal offense, may, if he so desires, after he is brought before the Magistrate, demand fuller information, so as to properly defend himself against the offense of which he is accused. He has redress against the Magistrate, if that officer issues the warrant without authority of law; and he may pursue in the proper way the person who has made the complaint against him, if such complaint is unfounded.

Mr. Justice Cothran discusses several cases which he frankly states *do not answer the inquiry now before the Court.* It seems needless, therefore, for us to refer to these cases. He thinks, however, the case of *Ex parte Murray,* 112 S. C., 342, 99 S. E., 798, 5 A. L. R., 1152 (referred to by him and incorrectly in the report of the case as *Murray v. Harris*), answers the inquiry to the question here made. I do not agree with him.

The *Murray case* related solely to the extradition of persons charged with crime in a sister state, apprehended in this State. The two cases upon which Mr. Justice Hydrick, who wrote the opinion for this Court, based his conclusions were *Roberts v. Reilly,* 116 U. S., 80, 6 S. Ct., 291, 29 L. Ed., 544; *Rice v. Ames,* 180 U. S., 371, 21 S. Ct., 406, 45 L. Ed., 577. These cases, as well as the citation from Ruling Case Law (Vol. 11, 743), pertain entirely to the subject of extradition. Mr. Justice Hydrick rightly placed his construction of the law of extradition upon decisions of the Supreme Court of the United States, for State Courts are bound by the construction of the extradition laws adopted by that Court. *Ex parte Letcher,* 145 Cal., 563, 79 P., 65;

*Dennison v. Christian,* 72 Neb., 703, 101 N. W., 1045; Id., 196 U. S., 637, 25 S. Ct., 795, 49 L. Ed., 630.

The federal decisions, however, are not binding upon this Court in the case at bar, wherein the question relates solely to the arrest of a person within this State on the charge of a violation of the law of the State.

There is, as there should be, a great difference in arresting a person in South Carolina, to be conveyed to another State or foreign country for trial, and in the arrest of one in this State, to be tried here for the violation of one of our laws. And Mr. Justice Hydrick, in the *Murray case,* in referring to the affidavit necessary for an extradition warrant, saw the distinction, for he said:

"Under such an affidavit, a citizen might be deprived of his liberty, and carried to a distant State, where he has neither friends nor property, and where even his good name would not avail him, upon the belief of the affiant, which, when sifted, would amount to nothing but a mere suspicion."

The Legislature has seen fit to make a distinction in the arrest of persons charged with crime and the search of houses. It is not necessary to inquire into the reasons for this difference, but, undoubtedly, the inherent feeling born in American citizens to regard the home of the humblest as sacred as the castle of the mighty had some effect in the making of this distinction. The law as to search warrants (Section 46, Code of Criminal Procedure) require specifically that the application, upon which a search warrant is based, shall set forth, under oath, *"fully and particularly all the facts."* The things required for a search warrant are not required for the issuance of an arrest warrant, as provided in Section 26 of the Code of Criminal Procedure. There is no provision either for the amendment of the information or application upon which a search warrant is based, as is provided in the law for the information on which an arrest warrant is issued.

I do not think the provisions of the attachment law (Section 502, Code of Civil Procedure) have any bearing upon the question in this case. The Legislature, in that matter, had also the right to make a distinction from the law as to arrest, if it saw fit so to do, so long as it legislated within the provisions of the Constitution. It is to be observed that a warrant for attachment is to be issued "whenever it shall appear by *affidavit* that a cause of action exists, * * * specifying the amount of the claim *and the grounds thereof.*" An "affidavit" is: "A written or printed declaration or statement of facts, made voluntarily, and confirmed by the oath or affirmation of the party making it, taken before an officer having authority to administer such oath." Black's Law Dictionary. The attachment law provides for an affidavit, and distinctly requires that the "grounds" for the attachment must be set forth in the affidavit.

The provisions of the Code as to arrest warrants do not require the "grounds" to be set forth in the information of the complainant. And our Constitution likewise fails to so provide. The Constitution requires only that "probable cause" be shown on oath or affirmation. The Code, with reference to arrest warrants, uses the word "information." That word, according to Mr. Black, who quotes the definition as given by Blackstone, means this: "An accusation exhibited against a person for some criminal offense, without an indictment." It will appear, therefore, that there is quite a distinction between the words "affidavit" and "information," and the Legislature, we must presume, had that distinction in mind when enacting the statute as to arrest on a warrant issued by a Magistrate, and the law of attachment.

MESSRS. JUSTICES STABLER and CARTER concur.

MR. JUSTICE COTHRAN (dissenting) : The defendant was convicted in the municipal Court of the Town of Mayesville for a violation of an ordinance against automobile speeding. Upon the trial he moved to dismiss the proceeding upon the ground that the warrant upon which he was arrested was

issued upon an affidavit made by the officer upon "information and belief," without stating the information or the source of it. His motion was refused, and conviction followed with a sentence of $75 fine or imprisonment for 30 days. Upon appeal to the Circuit Court, his Honor, Judge Johnson, signed an order affirming the conviction below, for reasons stated in the order as set forth in the opinion of Mr. Justice Carter. From this order and judgment the defendant has appealed to this Court.

The sole question in the appeal is whether an arrest warrant, based upon an affidavit made upon "information and belief," without stating either the information received or the source of it, is legally sufficient. It is conceded that, if this question should be decided in the negative, the defendant was entitled to his discharge, and the judgment must be reversed.

The Constitution, Art. 1, § 16, provides:

"The right of the people to be *secure in their persons,* * * * against unreasonable * * * seizures, shall not be violated, and *no warrant shall issue but upon probable cause, supported by oath* or affirmation. * * *"

Section 60 of the Code of Criminal Procedure confers upon municipal Courts "all the powers and authority of Magistrates in criminal cases" in the trial of offenders against their ordinances.

Section 26 provides:

"All proceedings before Magistrate in criminal cases shall be commenced on *information under oath,* plainly and substantially setting forth the offense charged, *upon which, and only which, shall a warrant of arrest issue.*"

What is it to be supported by oath or affirmation?

In the case of *State v. Higgins,* 51 S. C., 51, 28 S. E., 15, 38 L. R. A., 561, it is not clear whether the arrest was held illegal, for the reason that there was no affidavit at all supporting the warrant, or whether it was defective in form. It is stated in the opinion:

"Now from the papers accompanying the sheriff's return to the writ of *Habeas corpus,* and referred to in the return, it is manifest that the warrant under which the defendant was arrested was not supported either by oath or affirmation;  *  *  * "  The Court, however, declared: "In the case of the *State v. Wimbush,* 9 S. C., 309, it was held that a warrant issued on a statement of facts not sworn to is unconstitutional, null, and void, and that it was not unlawful to resist an officer attempting to arrest one under an illegal warrant"; and "The Constitution, in Sec. 16 of Art. 1, forbids the issuing of any warrant for the arrest of any person except upon probable cause, supported by oath or affirmation."

Turning to the *Wimbush case,* we find that there was no affidavit at all supporting the warrant, only a statement in writing by the prosecutor upon which the warrant was issued.  That case is therefore not of much assistance in answering the question above indicated.

In *Ex parte Burford,* 3 Cranch, 448, 2 L. Ed., 495, there was no supporting affidavit.  The Court said:

" *  *  *  The warrant of commitment was illegal, for want of  *  *  *  some good cause,  *  *  *  *supported by oath.*"

Still that case does not answer the inquiry.

In *Branchville v. Felder,* 86 S. C., 280, 68 S. E., 575, upon call of the case in Mayor's Court the defendant demanded a warrant (a warrant of course supported by a valid affidavit) ; the demand was refused.  Upon appeal, the conviction was reversed upon the ground that the defendant was entitled to an arrest warrant, of course properly supported.

Still this case does not answer the inquiry.

I think that the inquiry *is* answered in the case of *Murray v. Harris,* 112 S. C., 342, 99 S. E., 798, 5 A. L. R., 1152. It is true that that was a case of extradition, but the question there raised was identically the question now raised,

whether a supporting affidavit containing the charge "upon information and belief" simply, without stating the sources of information or the grounds of belief, was a sufficient compliance with the legal requirement contained in the Constitution. It can make no difference whether the question was raised in an extradition case or in a case involving the breach of a local statute or ordinance; the question is the same in either case.

The Court there declared:

"This brings us to the consideration of the ground upon which we are asked to sustain Judge Townsend's order, to wit: That the affidavit upon which the Governor's warrant was issued was insufficient in law. The affidavit is sufficient in substance to charge respondents with the crime of burglary; but it is fatally defective in form, in that the facts set forth are sworn to 'to the best of his (affiant's) knowledge, information, and belief,' without stating what facts were within his knowledge, and what were stated upon his information and belief, and without setting forth the sources of his information or grounds of his belief. Under such an affidavit, a citizen might be deprived of his liberty, and carried to a distant State, where he has neither friends nor property, and where even his good name would not avail him, upon the belief of the affiant, which, when sifted, would amount to nothing but a mere suspicion. The law requires that at least probable cause shall be made out. It need not be stated with technical accuracy. It is enough if it be stated substantially, so as to lead a fair and reasonable mind to conclude that a *prima facie* case of guilt has been made out. This must appear before the Governor is authorized to issue his warrant. *Roberts v. Reilly*, 116 U. S., 80, 95, 6 S. Ct., 291, 29 L. Ed., 544.

"We must not be understood as holding that the affiant must have actual knowledge of the facts constituting the offense, or of any of them. An affidavit based upon information and belief is deemed sufficient, if the facts stated

make out a probable case, and if the sources of information and grounds of belief are stated. Unless this is done, the accused is not legally charged with having committed a crime."

The Court quoted at length, with approval, from the case of *Rice v. Ames,* 180 U. S., 371, 21 S. Ct., 406, 45 L. Ed., 577, where the following striking observations occur:

"The first two complaints, which were dismissed, as well as the first count of the complaint under which the proceedings were finally had, were obviously insufficient, since the charges were made solely upon information and belief, and no attempt was made even to set forth the sources of information or the grounds of affiant's belief. This is bad, even in extradition proceedings, which are entitled to as much liberality of construction in furtherance of the objects of the treaty as is possible in cases of a criminal nature. * * * A citizen ought not to be deprived of his personal liberty upon an allegation which, upon being sifted, may amount to nothing more than a suspicion. While authorities upon this subject are singularly few, it is clear that a person ought not to be arrested upon a criminal charge upon less direct allegations than are necessary to authorize the arrest of a fraudulent or absconding debtor."

The Court also cites 11 R. C. L., 743, where it is stated:

"A crime must be distinctly charged in the criminal proceedings, and the charge of crime must be made by persons who are acting under oath. A complaint sworn to by a person who does not pretend to have any personal knowledge of the facts or charge contained therein, and who merely states the charge on his information and belief, is insufficient"—citing *Grin v. Shine,* 187 U. S., 181, 23 S. Ct., 98, 47 L. Ed., 130; *Glucksman v. Henkel,* 221 U. S., 508; *Ex parte Spears,* 88 Cal., 640, 26 P., 608, 22 Am. St. Rep., 341.

In *Glucksman v. Henkel,* 221 U. S., 508, 31 S. Ct., 704, 55 L. Ed., 830, the Court said:

"The complaint [that is, the supporting affidavit in extradition] is sworn to upon information and belief, but it is supported by the testimony of witnesses who are stated to have deposed and whom therefore we must presume to have been sworn. That is enough." The necessary implication is that the accompanying depositions were all that saved the otherwise insufficient warrant.

In *Rice v. Ames,* 180 U. S., 371, 21 S. Ct., 406, 45 L. Ed., 577, the Court said:

"If the officer of the foreign government has no personal knowledge of the facts, he may with entire propriety make the complaint upon information and belief, stating the sources of his information and the grounds of his belief, and annexing to the complaint a properly certified copy of any indictment or equivalent proceeding, which may have been found in the foreign country, or a copy of the depositions of witnesses having actual knowledge of the facts, taken under the treaty and Act of Congress. This will afford ample authority to the commissioner for issuing the warrant. * * * The first count is bad, by reason of its unsupported allegations upon information and belief. * * * "

A similar provision in the attachment law has been construed to require the affidavit to positively state the facts, and, if upon information, it must also state the sources of information and circumstances relied upon to show them. There the provision is: "The warrant may be issued whenever it shall appear by affidavit that a cause of action exists," etc. See cases cited in note to Section 502, Code Civ. Proc. It certainly would be remarkable that greater laxity should be countenanced in instances of the deprivation of a man of his liberty than of his goods and chattels. As the Supreme Court of the United States (*Rice v. Ames,* 180 U. S., 371, 21 S. Ct., 406, 45 L. Ed., 577) observed as above quoted: " * * * A person ought not to be arrested upon a criminal charge upon less direct allegations than are necessary to authorize the arrest of a fraudulent or abscond-

ing debtor"; or I may add than is necessary to authorize the sequestration of his property.

See, also, 16 C. J., 287.

I realize that the adoption of my views in this matter would cause inconvenience to officers and some embarrassment; but in my opinion such considerations are negligible as compared with the observance of the provisions of the Constitution in protection of the sacred right of the liberty of the citizen.

Mr. CHIEF JUSTICE WATTS concurs.